In re Katherine A. WILSON (Krysl) and Philip L. Krysl.

Lee R. Shelton, Appellant–Plaintiff,

v.

Katherine A. Wilson (Krysl) and Philip L. Krysl, Appellees–Defendants.

No. CIV. 04–6128–AA.

United States District Court, D. Oregon.

June 22, 2004.

Lee R. Shelton, Eugene, OR, pro Se.

John Henderson, Judson Carusone, Bromley Newton LLP, Eugene, OR, for Appellees.

## OPINION AND ORDER

AIKEN, District Judge.

Appellant, John Shelton, pursuant to 28 U.S.C. § 158(a)(1), appeals the Amended Order and Injunction entered by the Bankruptcy Court on January 16, 2004, and the Order and Injunction entered on November 25, 2003, by the Bankruptcy Court.

### FACTUAL BACKGROUND

Appellant Shelton commenced the underlying proceeding against the Appellee–Debtors in bankruptcy ("Wilson and Krysl") seeking a determination that a debt allegedly owing by Wilson and Krysl to a third party (from whom Shelton acquired the debt) is excepted from Wilson and Krysl's discharge, or in the alternative, that Wilson and Krysl be denied a discharge in this bankruptcy proceeding.

Wilson and Krysl moved to dismiss Shelton's case alleging that he lacked standing. Specifically, Wilson and Krysl argued that Shelton was unlawfully conducting the business of a collection agency as defined by Oregon law. They further asserted that he was not registered as a collection agency as required by Oregon law, and therefore, barred from proceeding. Wilson and Krysl sought an injunction, as provided under Oregon law. They also sought damages, and their reasonable attorney's fees and costs pursuant to Oregon law and 11 U.S.C. § 523(d).

On April 16, 2003, the Bankruptcy Court conducted a detailed evidentiary hearing on Wilson and Krysl's motion to dismiss. *See* Hearing Transcript. The parties then submitted post-hearing memorandums further outlining their theories. The court entered a final Opinion, Order and Injunction on January 16, 2004, as amended, granting the motion to dismiss and holding that Shelton lacked standing to bring a complaint.

### DISCUSSION

The Bankruptcy code directs who can bring adversary proceedings. Only a creditor can initiate a proceeding under 11

U.S.C. § 523(a) to determine the non-dischargeability of a debt, and that debt must be owed to that creditor. Shelton has sought a non-dischargeability order for a debt assigned to him by ATEZ, Inc., an asbestos removal company. Shelton asserts that pursuant to 11 U.S.C. §§ 523(a)(2) and (4) that he is an assigned creditor.

■ Similarly, only a trustee, creditor, or the U.S. Trustee can object to a discharge under 11 U.S.C. § 727. "The trustee, a creditor, or the United States Trustee may object to the granting of a discharge under subsection (a) of this section." 11 U.S.C. § 727(c). Shelton has objected to Wilson and Krysl's discharge under 11 U.S.C. § 727(a) as an alleged creditor.

Under the code, Shelton must be a "creditor" or he lacks standing to pursue his claims. A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A claim is the "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. § 101(5)(A).

■ A collection agency is defined as: "any person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed, due or asserted to be owed or due to another person or to a public body[.]" ORS 697.005(1)(a)(A).

If a person qualifies as a collection agency, then that person must be registered with the Oregon Department of Consumer and Business Services prior to collecting any debts. *See* ORS 697.015. A person violating ORS 697.015 is subject to civil action, civil penalties and an injunction. ORS 697.087, 697.095.

Wilson and Krysl argue that the plain meaning of the statute requires Shelton to comply with the registration requirements under Oregon law. Shelton has solicited, and thereafter, purchased ATEZ's claims against third parties. In the last three years, ATEZ sold a total of three claims to Shelton. In the last ten years, ATEZ sold approximately six claims to Shelton. In 2002, Shelton acquired four or five claims from parties other than ATEZ. The sales are normally evidenced by written assignments. If a collection suit is filed, Shelton usually files as an "assignee" of ATEZ. In one such case in 2002, a defendant paid ATEZ directly. Shelton therefore dismissed the case and considered the debt satisfied.

At issue today is a March 18, 2002, purchase by Shelton from ATEZ. Shelton purchased all of ATEZ's right, title and interest in a $636.87 claim against debtor, Katherine Wilson, as evidenced by a written assignment.

Robert Kenyon, the President of ATEZ, testified at the evidentiary hearing that Shelton "probably approached me" about buying the debts. Tr. p. 12. Further, Shelton testified that his occupation is a "consultant," specifically "chasing people who owe money—business operations." When asked if he was referring to debts owed to other people in a system of collection, Shelton responded, "I am referring to debts that are owed to businesses, commercial debts and commercial debts only. I do not deal with consumer debt." Tr. p. 19.

Based on this evidence, I find that Shelton is engaged in soliciting claims and therefore is required to register with the State as a collection agency. Shelton stipulated that he was not, in fact, registered as a collection agency, therefore, he is prohibited from attempting to collect on his alleged assignment until he has regis-

tered with the State in compliance with the statute.

■ Shelton, however, asserts that he is exempt from the registration requirement by a statutory exclusion for a person providing "factoring services." The exclusion provides:

"Collection agency" does not include:

(L) Any person while the person is providing factoring services. A person is providing factoring services for the purposes of this subparagraph if the person engages, directly or indirectly, in the business or pursuit of:

. . .

(ii) Soliciting or collecting on accounts that have been purchased from commercial clients under an agreement whether or not the agreement:

(I) Allows recourse against the commercial client;

(II) Requires the commercial client to provide any form of guarantee of payment of the purchased account; or

(III) Requires the commercial client to establish or maintain a reserve account in any form.

ORS 697.005(1)(b)(L)(ii).

This statute requires that the person be engaged in the business of "soliciting or collecting on accounts that have been purchased from commercial clients *under an agreement.*" *Id.* (emphasis added).

Shelton contends that the written assignment of ATEZ's claim against Wilson and Krysl to Shelton is sufficient to meet the "agreement" requirement.

I disagree and find no evidence of a verbal or written agreement to provide factoring services. The statute does not define "under an agreement," this court did not find any case law construing the phrase, nor did either party submit any authority on this issue. The parties and Bankruptcy Court agree that this appears to be a matter of first impression.

Wilson and Krysl argue, and the Bankruptcy Court found, that to avoid rendering the "under an agreement" language surplusage, it must require something more than a single agreement to purchase a single claim as the statute uses the plural term "accounts." Wilson and Krysl assert that the statute contemplates some form of ongoing agreement between the "factor" and its client to collect the client's accounts.

The Bankruptcy Court did a thorough job of outlining the relevant statutory history, finding that "collection agencies" have long been regulated in Oregon, either by licensure or registration. In 1959, "individuals or firms who purchase or take accounts receivable for collateral purposes" were excluded from the definition of "collection agency business." ORS 697.020(4)(1959)(amended 1975)(repealed 1979). In 1963, the legislature added to the definition of "collection agency business," "any person ... who solicits or accepts accounts for collection on a contingent or percentage basis or by a fee or outright purchase for collection purposes[.]" ORS 697.020(3)(1963)(repealed 1977).

In 1975, "factoring agencies" were those that engaged in "factoring," which consisted of lending money to commercial clients, taking accounts receivable as security, and collecting upon those accounts. Also in 1975, the exclusion for those purchasing or taking accounts receivable for collateral purposes, was replaced by an exclusion for persons "who purchase accounts without recourse." This exclusion made no mention of the purchase being "under an agreement" or otherwise. ORS 697.020(4)(1975)(repealed 1977). It applied to "factoring services," as well as to

"collection agency business" and "billing services." *Id.*

In 1977, the legislature added to the definition of "factoring or factoring service," parties who solicited or collected on commercial accounts purchased under an agreement with recourse. ORS 697.021(10)(b) (repealed 1981). In 1981, the legislature removed "factoring services" (as well as billing services) from regulation. It replaced the prior exclusion for "purchasers of accounts" with essentially the current exclusion for those providing "factoring services," labeling such as an "exemption." ORS 697.025(9)(b)(1981)(repealed 1995, and renumbered with grammatical changes as the current ORS 697.005(1)(b)(L)).

Wilson and Krysl argue that this history supports the construction that the current "under an agreement" language connotes an agreement that is more than an agreement evidencing the purchase of any given individual claim. Prior to 1981, certain purchasers of accounts were excluded from the regulatory scheme no matter if under "an agreement." Then, in 1981, the legislature supplanted the then-existing exclusion with the current one for "factoring services," which now requires purchase "under an agreement."

■ I further rely on the definition of the term "factoring" as it is understood in common law. Its modern usage is—one who supplies financing by buying accounts receivable at a discount.

While in the past the terms "factor" and "commission merchant" were used interchangeably, "factoring" in modern commercial practice is understood to refer to the purchase of accounts receivable from a business by a "factor" who thereby assumes the risk of loss in return for some agreed discount. Indeed, the factor has emerged primarily as a financier, often a finance company or similar institution, which provides its clients (usually manufacturers or other suppliers of goods) with needed working capital and other financial assistance by purchasing their accounts receivable.

32 Am Jur.2d, Factors and Commission Merchants § 2 (2003). This "modern usage" was impliedly recognized in *Frutiger v. Department of Revenue*, 270 Or. 821, 824, 529 P.2d 910 (1974). There, a corporation entered into a "financing agreement" whereby it was assigned another business' accounts receivable in consideration of advances of 85% of the fact amount of the accounts. *Id.* The court characterized the corporation as being "engaged in the factoring business." *Id. See also, Zidell Marine Corp. v. West Painting, Inc.*, 133 Or.App. 726, n. 9, 894 P.2d 481 (1995)(dissent)(" '[f]actoring' is a commonly used short-term financing arrangement whereby the debtor assigns acceptable accounts receivable to the creditor at a discount").

Wilson and Krysl assert that based on the legislation, the terms "factoring" and "factoring service," as originally enacted, contemplated the "modern" usage of the term, which supports an interpretation that some overall financing agreement needs to be in place. Here, there is no evidence of a written or verbal factoring or financing agreement. In fact, Mr. Kinyon, president of ATEZ, testified that Shelton has never provided factoring services to ATEZ. Tr. p. 13. Shelton cannot unilaterally declare that he is ATEZ's factor, particularly since there is no evidence of any agreement between Shelton and ATEZ for Shelton to provide factoring services. Moreover, the purchase of six claims in ten years, standing alone, does not evidence ongoing factoring services. Therefore, I find that Shelton is not entitled to the registration exemption for providing "factoring services."

■ Finally, the Bankruptcy court noted that a court should not construe a statute in such a manner to reach a result which is "patently absurd." The Bankruptcy court reasoned that if Shelton's interpretation were allowed to prevail (and that would require only an agreement to sell or assign an individual account), then the exclusion would consume the whole. Specifically, any "collection agency" could qualify for the statutory exclusion for providing "factoring services." This reasoning further supports this court's conclusion that some ongoing agreement to purchase accounts and/or to provide financing is required by ORS 697.005(1)(b)(L)(ii).

Shelton admits that he had no underlying financing agreement or any other agreement for the purchase of ATEZ's accounts. Therefore, I find that Shelton satisfies the definition of a collection agency but does not qualify for the exclusion for providing "factoring services."

■ Shelton next contends that the Bankruptcy Court violated his Fifth Amendment due process rights because the Court did not provide him sufficient notice that an injunction might issue based on the outcome of the April 16, 2003, hearing.

Wilson and Krysl requested an injunction for violation of the Oregon Collection Agency statutes in their proposed First Amended Answer served on Shelton on February 27, 2003. Shelton received further notification of a potential injunction when Wilson and Krysl filed their motion to dismiss asserting that Shelton lacked standing to pursue his collection action. In asserting their standing argument, Wilson and Krysl argued that Shelton was operating in violation of the Oregon Collection Agency regulation statutes. Those statutes authorize the issuance of an injunction upon a finding of violation and injury to the alleged debtor, and further

allow a court to "provide such equitable relief as it deems necessary and proper." ORS 697.087(1).

■ Finally, I find that Shelton was definitively notified of a possible injunction when the Bankruptcy Court specifically stated at the beginning of the April 16, 2003, hearing, that it was considering entering an injunction. Tr. p. 4, 7. Despite that notification, Shelton stated that he was ready to proceed with the evidentiary hearing. Based upon the Court's statements to the parties at the start of the evidentiary hearing, I find that Shelton had actual knowledge that an injunction might issue. The parties were then allowed to present evidence on this issue. Based upon the Bankruptcy Court's finding that Shelton lacked standing, that he was operating in violation of the Oregon collection agency statutes, and that his complaint should be dismissed, I find that the Court made sufficient factual findings following a full evidentiary hearing and an opportunity for the parties to further brief the matter to issue its injunction.

■ Shelton next asserts that he could have called several witnesses on his behalf if he had better notice. Shelton included this evidence in his brief and Excerpt of Record before this court. Wilson and Krysl object to the inclusion of this evidence as it was not included in the official record. I will, however, consider this evidence.

Shelton's "new" evidence is testimony on the application of the statutory exemption for factors. Regardless of the notice Shelton may have had with regard to a potential injunction, Shelton does not dispute that he was aware that in order to overcome the motion to dismiss pending before the Bankruptcy Court, he was required to show that he was an exempt factor under Oregon law. Therefore, it was incumbent

upon Shelton to have called these witnesses to testify to his "factoring" status. Moreover, the record does not show, nor does Shelton allege that he made any offers of proof as to these witnesses or any related exhibits. The Bankruptcy Court allowed Shelton every opportunity to present witnesses and evidence on his behalf. I find no due process violation in this regard.

 Shelton next asserts that he was denied an opportunity to assert two affirmative defenses to Wilson and Krysl's counterclaims. Even assuming that this is true, I find that Shelton's harm, if any, is de minimus. Shelton alleges that he would have raised an issue of failure to state ultimate facts sufficient to state a claim. I note that "stating ultimate facts" is not required in federal court unlike the requirement in state court. The counterclaims were appropriately plead under federal pleading rules. Shelton next alleges that he would have asserted an affirmative defense of "exemption" under the Oregon statute. I assume that this exemption is the same factoring exclusion that was fully discussed and rejected by the Bankruptcy Court. Therefore, I find that the Bankruptcy Court had a full opportunity to address Shelton's proposed second affirmative defense.

 Shelton next argues that the Bankruptcy Court abused its discretion because its Opinion states that it will issue an injunction against Shelton enjoining further activities "in this district," however, the Order and Injunction state a geographical area comprised of "in the state of Oregon." I find no abuse of discretion. There is but one federal district in this state and it comprises the entire state of Oregon. Therefore, I find no inconsistency in the Court's injunction language. Further, I find the injunction's form sufficient under Fed.R.Civ.P. 65(d).

 Finally, Shelton asserts that the Court improperly found that Wilson and Krysl were injured. I disagree. There was sufficient evidence that Wilson and Krysl were harmed by Shelton's unlawful collection action. First, the statute authorizes imputed damages. ORS 697.087(1). Wilson and Krysl's harm was explicitly found by the Bankruptcy Court. "Defendants have incurred attorney's fees and costs in defending against Plaintiff's complaint." Amended Memorandum Opinion, January 15, 2004, p. 3. A Bankruptcy Court's findings of fact are accorded great weight and should only be set aside if clearly erroneous. Fed. R. Bankr. Pro. 8013.

*CONCLUSION*

Appellant Shelton's motion appealing the Bankruptcy Court's Amended Order and Injunction and Order and Injunction is denied. The Bankruptcy Court's Amended Order and Injunction are affirmed. This case is dismissed.

IT IS SO ORDERED.