Christopher A. GAVIN and Patricia A. Gavin, Debtors.

Premier Capital, LLC, Appellant,

v.

Christopher A. Gavin, Appellee.

BAP Nos. MB 04–028.
Bankruptcy No. 02–17620–CJK.
Adversary No. 03–01081–JBR.

United States Bankruptcy Appellate Panel for the First Circuit.

Dec. 16, 2004.

J. Mark Dickison, Esq., Boston, MA, on brief for Appellant.

Roger S. Davis, Esq., Boston, MA, on brief for Appellee.

Before VOTOLATO, DEASY, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

VOTOLATO, Bankruptcy Judge.

This matter is before the Panel on appeal from an order of the bankruptcy court granting Christopher Gavin's (the "Debtor") motion under FRCP 52[1] and

1. Federal Rule of Civil Procedure 52 is made applicable to this proceeding by Federal Rule

dismissing the complaint[2] filed by Premier Capital, LLC ("Premier"), seeking a determination of dischargeability under 11 U.S.C. § 523(a)(2)(A).[3] The bankruptcy court's ruling was predicated on its findings and/or conclusions that Premier failed to establish under Bankruptcy Rule 4007(a) that it is a creditor entitled to seek a determination of the dischargeability of a debt under § 523(a)(2)(A) due to Premier's failure to supply evidence to overcome a fatal break in the chain of title to the Note which underlies Premier's cause of action. Upon consideration by the Panel, the Order of the bankruptcy court is **AFFIRMED**.

## BACKGROUND

In 1998, the Debtor and a business associate, David Colozzi, executed a $50,000 promissory note (the "Note") and loan agreement with Fleet Bank for a business line of credit to be used by Compulabs, Inc. The Debtor signed the borrower's application as President of Compulabs, and Mr. Colozzi signed as Vice President, and both Gavin and Colozzi personally guaranteed the loan. Compulabs subsequently drew down the full amount of the $50,000 credit line.

In 2002, the Debtor and his spouse, Patricia Gavin, filed a joint Chapter 13 petition, and in their Schedule D of Secured Creditors listed Premier as a creditor in the amount of $50,000, secured by an attachment on the Debtor's real estate. The bankruptcy court later granted the Debtors' §§ 522(f)(2)(A) and 547(b)(4)(A) Motion to Avoid Premier's judicial lien. Shortly thereafter, the case was converted to Chapter 7, and Premier timely filed a § 523(a)(2)(A) action to determine the dischargeability of the debt in question. The complaint alleges that the Debtor owes Premier $50,000, and that the obligation is evidenced by the following documents: (1) Fleet Business Credit Express Application signed by the Debtor as guarantor; (2) Loan Purchase and Sale Agreement by and between Sovereign Bank and Premier; and (3) Writ of Attachment against Debtor's real estate issued in favor of Premier by the Suffolk County Superior Court, and (4) Proof of Attachment. The gist of Premier's complaint is that the Debtor misrepresented in the loan application the purpose(s) for which the borrowed funds would be used.

At the hearing on the merits Premier cross-examined the Debtor regarding the Note and the use of the loan proceeds. When Premier rested its case, the Debtor moved to dismiss the complaint under FRCP 52 on the ground, *inter alia*, that Premier did not have standing to bring this fraud action, as the Debtor had made no representations, accurate or otherwise, to Premier. The Debtor also argued that there was no evidence of an assignment of the claim to Premier and that in any event, as a matter of law in Massachusetts, actions for fraud are not assignable.

Premier responded that it had standing to object to the discharge of this debt

---

of Bankruptcy Procedure 7052. Unless otherwise indicated, the Federal Rules of Civil Procedure shall be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure shall be referred to as "Bankruptcy Rule."

**2.** Although the complaint listed three counts, Premier waived counts II and III at trial and proceeded only under count I, alleging violation of § 523(a)(2)(A).

**3.** Unless otherwise indicated, all references to the "Bankruptcy Code" or the "Code" and all references to specific statutory sections or by the " § " symbol are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

because the Debtor had listed Premier as a creditor in his bankruptcy schedules and conceded that Premier had filed a state court lawsuit against him, based on the Note. Acknowledging that it provided no evidence of an assignment of the Note, Premier stated "we don't have a direct connection between Fleet and Sovereign," but argued that an assignment had occurred in the ordinary course of business. Finally, Premier argued, without supporting authority, that the bankruptcy court should overlook the missing link in the chain of title because public policy favors the assignment of non-performing loans.

In rejecting Premier's arguments, the bankruptcy court concluded that Premier's failure to demonstrate that it owns the Note (i.e., the absence of evidence of an assignment of the Note by Fleet to Sovereign) is fatal. The bankruptcy court noted that the evidence established only that Gavin incurred a debt to Fleet, and that Sovereign allegedly assigned that claim to Premier. The court found, based on the failure to establish ownership of the Note, that Premier had no standing to challenge the dischargeability of the debt. The court also noted that, in the circumstances, it need not reach the question of the assignability of fraud claims. This appeal followed.

### JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted).

An interlocutory order "'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if the issue is not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998). The order dismissing Premier's adversary complaint is a final order that ended the litigation on the merits of the complaint. *See Bank of New England*, 218 B.R. at 645.

### STANDARD OF REVIEW

■ Appellate courts generally apply the clearly erroneous standard to findings of fact, and *de novo* review to conclusions of law. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). A bankruptcy court's determination that the plaintiff in a dischargeability action has failed to prove it is a "creditor" is a legal conclusion subject to *de novo* review. *See Securities Exchange Comm'n v. Cross (In re Cross)*, 218 B.R. 76, 76 (9th Cir. BAP 1998).

### DISCUSSION

#### A. The Standing Issue

Premier brought an action under § 523(a)(2)(A), which deals with the dischargeability of a debt obtained by "false pretenses, a false misrepresentation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). A "debt" is a liability on a claim. 11 U.S.C. § 101(12). The Debtor admits that he

owes a debt based on the Note, but, after extensive trial and appellate proceedings, the question remains: to whom is the debt owed?

■ Bankruptcy Rule 4007(a) provides that a debtor or any creditor may file a complaint to determine the dischargeability of any debt, and a creditor of the debtor has standing to bring a cause of action based on a violation of § 523(a)(2)(A). 11 U.S.C. § 523(c)(1); *Securities and Exchange Commission v. Kane (In re Kane),* 212 B.R. 697, 700 (Bankr.D.Mass.1997). At the outset, therefore, to proceed with its § 523(a)(2)(A) action, Premier had the burden of proving, in the bankruptcy court, that it is a creditor. *See id.;* Fed. R. Bankr.P. 4007(a).

■ A "creditor" is "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," 11 U.S.C. § 101(10)(A), and a "claim" is a "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. § 101(5)(A). The Supreme Court has explained that the definition of "claim" is to be construed broadly, and that a "right to payment" means "nothing more nor less than an enforceable obligation." *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). "Absent an overriding federal interest, the existence of a claim in bankruptcy is generally determined by state law." *Cross,* 218 B.R. at 78 (analyzing whether plaintiff had standing to bring § 523(a)(2)(A) action against chapter 7 debtor). State law applies in this instance because the underlying transaction is purely commercial in nature and there is no apparent federal interest, overriding or otherwise. Therefore, it is Premier's burden to show that under Massachusetts law it has an enforceable obligation against the Debtor. *See id.*

■ Under Massachusetts law, Article 3 of the Uniform Commercial Code is used to determine questions of title to negotiable instruments. Under the U.C.C., a negotiable instrument is:

(a) [ . . . ] an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder.

Mass. Gen. Laws ch. 106, § 3–104. Here, the instrument is a promissory note which contains the Debtor's unconditional promise to pay $50,000 to Fleet. App. at 186. As such, the Note is a negotiable instrument, and any transfer of its ownership is subject to the requirements prescribed in Article 3. *See* Mass. Gen. Laws ch. 106, § 3–104.

Article 3 provides that where a negotiable instrument is payable to an identified person, transfer of ownership of the instrument requires endorsement by the holder, and transfer of possession of the instrument. Mass. Gen. Laws ch. 106, § 3–201. Article 3 also provides that an instrument is "transferred" when it is delivered by the holder for the purpose of giving the recipient the right to enforce the instrument. Mass. Gen. Laws ch. 106, § 3–203(a). Proper transfer of the instrument vests in the recipient any right of the transferor to enforce the instrument, Mass. Gen. Laws ch. 106, § 3–203(b), and a transferor cannot transfer greater enforcement rights than it holds. *See id.*

With the Note in question payable to Fleet, any assignment of ownership of the Note requires endorsement and transfer of possession of the physical note. Therefore, Fleet's endorsement of the Note and transfer of possession of it to Sovereign,

and then Sovereign's endorsement of the Note and transfer of possession of it to Premier are central to Premier's status as a creditor in this case.

Article 3 does provide certain relief, however, in circumstances where a creditor is not in possession of a properly endorsed note. Specifically, Article 3 provides that a person who is not in possession of the instrument may nonetheless enforce it, *if* the instrument has been lost, destroyed, or stolen, and:

(i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred;

(ii) the loss of possession was not the result of a transfer by the person or a lawful seizure of the instrument; and

(iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person.

Mass. Gen. Laws ch. 106, § 3–309(a). A person seeking to enforce rights under a lost instrument must prove the terms of the instrument and the person's right to enforce it, Mass. Gen. Laws ch. 106, § 3–309(b), and a court may not enter judgment in favor of the person seeking enforcement unless it finds that the person obligated to pay the instrument is adequately protected against loss that might occur due to a claim by another party seeking to enforce the instrument. *Id.*

Adequate protection may be provided by any reasonable means. *Id.*

Here, Premier has produced the original Note as executed with Fleet, and the assignment of the Note by Sovereign to Premier, but failed to produce any evidence of an assignment of the Note by Fleet to Sovereign. Moreover, Premier failed to produce either evidence of the endorsements required to establish its ownership of the Note or substitute evidence permitted under applicable state law. To the contrary, Premier admitted at trial and at oral argument that it had no direct evidence of an assignment of the Note from Fleet to Sovereign. Absent such evidence, Premier has failed to establish title to the Note, and thus has no enforceable obligation against the Debtor. Without an enforceable obligation Premier has no claim, and therefore is not a creditor for purposes of Bankruptcy Rule 4007(a). Accordingly, it has no standing to bring a § 523(a)(2)(A) action against the Debtor.

■ Premier argues that the bankruptcy court erred in refusing to draw a "reasonable inference" that Premier owns the Note, based on the following: the Fleet loan application, the fact that the credit line was fully utilized, and the assignment of the Note from Sovereign to Premier.[4] However, "reasonable inference" is not the legal standard by which a creditor demonstrates that it holds an enforceable obligation. Article 3 makes clear that a break in the chain of title is bridged not by drawing a "reasonable inference" from cir-

4. Premier asks the Panel to adopt the reasoning of the Fifth Circuit in *NCNB Texas Nat. Bank v. Johnson,* 11 F.3d 1260 (5th Cir.1994), which Premier describes as "holding that generally 'the affidavit of a custodian of records is sufficient proof [of ownership of a note and guaranty agreement] unless the defendant points to evidence in the record supporting a legitimate fear that the plaintiff is not the owner and holder of the note, and that

some other party will later appear and demand payment.' " However, the Panel need not even consider whether to adopt the reasoning of this case, as Premier has failed to satisfy even its own characterization of the holding, i.e., Premier has submitted no affidavit, or any form of direct evidence tending to prove that Fleet assigned the Note to Sovereign.

cumstantial evidence, but by providing direct evidence which establishes the terms of the loan, ownership of the loan, and adequate protection that the Debtor will not sustain a loss from another party claiming to own the Note. Mass. Gen. Laws ch. 106, § 3–309(b). Without such evidence, the bankruptcy court was correct in finding that Premier had not presented a sufficient evidentiary record to establish that it was a creditor of the Debtor entitled to bring a dischargeability action against the Debtor based upon the Note.

Premier also asserts that the bankruptcy court erred in holding that the gap in the chain of title of the Note is fatal to Premier's § 523(a)(2)(A) action. *See* Appellant's Brief at 11. Specifically, Premier argues that the gap in the chain of title is an evidentiary problem governed by the Federal Rules of Evidence. *Id.* Premier then analogizes the break in the chain of title of the Note to a break in the chain of custody of police evidence in criminal cases. *Id.* (citing *U.S. v. Ladd*, 885 F.2d 954, 956 (1st Cir.1989), which held that a break in the chain of custody of police evidence in a drug prosecution affected only the weight and not the admissibility of the evidence).

This analogy is faulty for several reasons. The *Ladd* holding applies to criminal cases where the government seeks to admit evidence but cannot factually account for the care and control of that evidence at some point subsequent to its seizure by the police. Hence, a break in the chain of *custody*. Here, the admissibility of evidence was not at issue. It was Premier's failure to offer sufficient evidence of its ownership of the Note, not the admissibility of any such evidence, that was the basis for the bankruptcy court's

ruling. In other words, the issue is not the admissibility of evidence, but rather the legal significance of Premier's failure to proffer evidence of an assignment from Fleet to Sovereign. After all, the bankruptcy court did not exclude evidence,[5] but instead reached a legal conclusion based on the evidence (or lack thereof) before it. Here again, the bankruptcy judge correctly concluded that this break in title is fatal to Premier's § 523(a)(2)(A) action.

Lastly, the parties presented arguments in their briefs and at oral argument as to whether Premier proved the Debtor had committed fraud, and whether a fraud claim is assignable. Because we conclude that Premier has failed to establish standing as a creditor, we need not and do not address either the fraud issue, or the assignability of fraud claims issue.

## B. Frivolous Appeal

The Debtor has filed a separate motion seeking attorney's fees and costs. Bankruptcy Rule 8020, which adopts Rule 38 of the Federal Rule of Appellate Procedure, provides:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Imposing sanctions under Bankruptcy Rule 8020 is a two-step process. *Maloni v. Fairway Wholesale Corp. (In re Maloni)*, 282 B.R. 727, 734 (1st Cir. BAP 2002). First, the Panel must determine whether an appeal is frivolous. *Id.* Second, the Panel must examine whether the procedural requirements of Bankruptcy Rule 8020 are met. *Id.*

---

**5.** Indeed, despite the lack of a witness to authenticate it, the bankruptcy court admitted into evidence, with the Debtor's consent, the purchase and sale document between Sovereign and Premier.

While there is no formula for determining whether an appeal is frivolous, several factors may be considered. *Id.* Some of these factors are: the appellant's bad faith,[6] whether the argument presented on appeal is meritless *in toto,* and whether only part of the argument is frivolous. *Id.* Additionally, an appellate court may consider whether the appellant's argument addresses the issues on appeal, fails to cite any authority, cites inapplicable authority, makes unsubstantiated factual assertions, asserts bare legal conclusions, or misrepresents the record. *Id.*

Premier's appeal is weak on all fronts, and is essentially an attempt to rewrite the factual history of the trial in the bankruptcy court. Premier repeatedly asserts that it met its burden of proving it owns the Note, when in fact all it introduced was the executed Note to Fleet, that the Note was assigned to it by Sovereign, and that the entire credit line had been drawn down and spent. Premier flatly ignores the bankruptcy judge's findings of fact, the legal criteria regarding standing to bring a § 523(a)(2)(A) action, and the reality that Article 3 governs whether Premier holds an enforceable obligation. Also, regardless of Premier's inability to produce documentary evidence of an assignment of the Note by Fleet to Sovereign, Article 3 provides alternate evidentiary means for bridging the gap, which Premier has completely overlooked.

Notwithstanding the frailty of Premier's appeal, the Debtor's response fares no better. Both at trial and on appeal, the Debtor appears to have ignored that this is a dischargeability action under § 523(a)(2)(A). Notwithstanding the fact that Premier had brought a dischargeability complaint under the Bankruptcy Code, the Debtor never seriously addressed the standing issue under federal and state law. Even after he prevailed in the bankruptcy court, the Debtor did not appear to recognize the basis for the ruling of the bankruptcy court in his favor. Rather, he persisted in raising inapplicable Massachusetts state law on questions of fraud, the statute of limitations, and assignability of tort causes of action. At oral argument it was clear to the Panel that the Debtor still did not comprehend the basis for the bankruptcy court's decision. Accordingly, because his defense was so misdirected and of so little assistance to the Panel, we decline to award attorney's fees and double costs to the Debtor, who prevails here despite himself.

## CONCLUSION

For the reasons discussed above, we **AFFIRM** the bankruptcy court's Order granting the Debtor's motion under FRCP 52 and dismissing Premier's § 523(a)(2)(A) action, and **DENY** the Debtor's motion for attorney's fees and double costs.

---

**6.** A finding of bad faith is generally not required to impose sanctions under Bankruptcy Rule 8020. In *Maloni,* the Panel explained that "Generally, 'sanctions will be imposed regardless of the motive of the appellant be-cause the rule seeks to compensate an appellee who has had to waste time defending a meritless appeal.'" *Maloni,* 282 B.R. at 734 (quoting 10 Lawrence P. King, *Collier on Bankruptcy* ¶ 8020.06).