**In re Jeffrey S. BILFIELD and Janet M. Bilfield, Debtors.**

**Bankers Healthcare Group, Inc., Plaintiff,**

v.

**Jeffrey S. Bilfield, et al., Defendants.**

**Bankruptcy No. 12–12680.**
**Adversary No. 12–1208.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

April 2, 2013.

Michael C. Brink, Mary Stiles, Tucker Ellis & West, LLP, Cleveland, OH, Melissa S. Hayward, Franklin Skierski Hayward LLP, Dallas, TX, for Plaintiff.

Amelia R. Gray, Cambridge, MA, Susan M. Gray, Susan M. Gray Attys. & Counselors at Law, Rocky River, OH, Thomas C. Loepp, Stow, OH, for Defendants.

### *MEMORANDUM OF OPINION*

PAT E. MORGENSTERN–CLARREN, Chief Judge.

Plaintiff Bankers Healthcare Group, Inc. filed this complaint to ask that the debt owed to it by the debtor Jeffrey Bilfield be found nondischargeable and that both Jeffrey Bilfield and joint debtor Janet Bilfield be denied discharges. The debtors counterclaimed, alleging that the plaintiff willfully violated the automatic stay and requesting damages for that act.

The debtors now move for summary judgment on the complaint, which the plaintiff opposes.[1] For the reasons stated, the motion is granted.

### I. *JURISDICTION*

This court has jurisdiction under 28 U.S.C. 1334 and General Order No. 2012–7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), (J), and (O), and it is within the court's constitutional authority as analyzed by the United States Supreme Court in *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).

### II. *SUMMARY JUDGMENT*

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on the docket, and any affidavits show "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a) (made applicable by FED. R. BANKR.P. 7056); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Gen. Motors Corp. v. Lanard Toys, Inc.* 468 F.3d 405, 412 (6th Cir.2006). "[T]hat burden 'may be discharged by 'showing—that is, pointing out to the ... court—that there is an absence of evidence to support

---

1. Docket 18, 20, 21, 22.

the nonmoving party's case.' " *Id.* (quoting *Bennett v. City of Eastpointe,* 410 F.3d 810, 817 (6th Cir.2005)). "Once the moving party has satisfied its burden, the nonmoving party may not rest upon its mere allegations or denials of the opposing party's pleadings, but rather it must set forth specific facts showing that there is a genuine issue for trial." *Havensure, L.L.C. v. Prudential Ins. Co. of Am.,* 595 F.3d 312, 315 (6th Cir.2010). "In determining whether a genuine issue of material fact exists, [the] court draws all inferences in the light most favorable to the nonmoving party." *Id.* The issue at this stage is whether there is evidence on which a trier of fact could reasonably find for the nonmoving party. *Street v. J.C Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

A plaintiff cannot rest on mere allegations to establish standing in response to a motion for summary judgment "but must set forth by affidavit or other evidence specific facts, ... which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks and citation omitted). Although a plaintiff is not required to produce evidence in a form that would be admissible at trial, an affidavit offered in opposition to summary judgment must be "made on personal knowledge," must "set forth such facts as would be admissible in evidence," and must affirmatively show "that the affiant is competent to testify to the matters stated therein." *Alpert v. United States,* 481 F.3d 404, 409 (6th Cir.2007) (internal quotation marks and citations omitted); Fed.R.Civ.P. 56(c)(4). Under the same reasoning, unauthenticated documents offered in opposition to summary judgment

do not meet the Rule 56 requirements. *Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir.2009).

## III. DISCUSSION

### A. The Positions of the Parties

The complaint states five claims for relief including requests to deny the debtors discharges under 11 U.S.C. § 727(a)(2), (a)(4)(A) and (a)(5) and claims to determine nondischargeability of debt under 11 U.S.C. § 523(a)(2)(B) and (a)(6). The debtors request summary judgment based on the plaintiff's lack of standing and also as to each of the claims.[2] The arguments made by the parties are set forth below.

### B. Standing

 Standing is a basic requirement in every federal case. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). It is "a qualifying hurdle that plaintiffs must satisfy[.]" *Cmty. First Bank v. Nat'l Credit Union Admin.,* 41 F.3d 1050, 1053 (6th Cir.1995). Any plaintiff invoking federal jurisdiction bears the burden of establishing standing. *Clapper v. Amnesty Int'l USA,* —— U.S. ——, 133 S.Ct. 1138, 1148–49, 185 L.Ed.2d 264 (2013). The plaintiff's standing to bring this complaint is, therefore, the first issue which must be addressed. The question posed is whether the plaintiff "is entitled to have the court decide the merits of the dispute or of particular issues." *Warth,* 422 U.S. at 498, 95 S.Ct. 2197.

 Standing involves two limitations: a constitutional one and a prudential one. *McGlone v. Bell,* 681 F.3d 718, 728 (6th Cir.2012). The constitutional limitation is based on the "case or controversy" requirement of Article III of the United States Constitution. U.S. CONST. art.

---

**2.** Although the debtors' reply brief suggests that they requested partial summary judgment on their counterclaim, their motion specifically states that they are not seeking that relief and the court will not, therefore, consider it. *See* debtors' motion at 1, docket 18.

III, § 2, cl.1. To meet this limitation, the plaintiff must show that: (1) it has suffered an injury-in-fact which is concrete and particularized and actual or imminent, rather than conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely rather than merely speculative that the injury will be redressed by a favorable decision. *LPP Mortg., Ltd. v. Brinley,* 547 F.3d 643, 647–48 (6th Cir. 2008). The injury required under this limitation "may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Lujan,* 504 U.S. at 578, 112 S.Ct. 2130 (quoting *Warth,* 422 U.S. at 500, 95 S.Ct. 2197). To meet the injury-in-fact requirement, a party must have a personal stake in the outcome of the controversy. *Warth,* 422 U.S. at 498–99, 95 S.Ct. 2197. Constitutional standing must exist at filing and is a jurisdictional limitation that cannot be waived. *Zurich Ins. Co. v. Logitrans, Inc.,* 297 F.3d 528, 531 (6th Cir.2002); *see also Cundiff v. Cundiff (In re Cundiff),* 227 B.R. 476, 478 (6th Cir. BAP 1998) (noting the same).

■ To meet the prudential limitation on standing a plaintiff must: (1) assert its own legal rights and not rest its claims to relief on the legal rights or interests of third parties; (2) assert more than a generalized grievance that is shared by a large class of citizens; and (3) in statutory cases, fall within the "zone of interests" regulated by the statute in question. *Coal Operators & Assocs., Inc. v. Babbitt,* 291 F.3d 912, 916 (6th Cir.2002). These requirements enforce the principle that "'the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" *Id.* at 916 (quoting *Pestrak v. Ohio Elections Comm'n,* 926 F.2d 573, 576 (6th Cir.1991)).

■ The plaintiff requests that the debtors be denied a discharge under Bankruptcy Code § 727(a)(2), (4), and (5). This relief may only be requested by the trustee, a creditor, or the United States trustee. 11 U.S.C. § 727(c)(1). As the plaintiff is not the chapter 7 trustee or the United States trustee, its standing to bring these claims hinges on its being a creditor. The term "creditor" in this context means an "entity that has a claim against the debtor that arose at the time of or before the order for relief[.]" 11 U.S.C. § 101(10)(A). The definition of "claim" is broad and includes the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). Courts uniformly hold that a plaintiff that is not a creditor lacks standing to object to discharge under § 727(a). *See, for example, Lussier v. Sullivan (In re Sullivan),* 455 B.R., 829, 835 (1st Cir. BAP 2011) ("Thus, whether [plaintiff] has standing here turns on whether [plaintiff] is a creditor."); *Shelton v. Wilson (In re Wilson),* 311 B.R. 566, 569 (D.Or.2004), *aff'd* 185 Fed.Appx. 696 (9th Cir.2006) (noting that the plaintiff objected to discharge as a creditor and must be a creditor to have standing to do so); *CM Temp. Servs., Inc. v. Bailey (In re Bailey),* 375 B.R. 410, 414–15 (Bankr.S.D.Ohio 2007) (same); *Kirby v. Kirby (In re Kirby),* 356 B.R. 324, 326 (Bankr.D.N.H.2006) (same); *Rasmussen v. Ryan (In re Ryan),* Adv. No. 04–6007, 2006 WL 6812694 at *9 (Bankr.D.Idaho 2006) (same).

The same is true of the plaintiff's request that a specific debt be found to be nondischargeable under § 523(a)(2)(B) and (a)(6): its standing to bring those claims depends on it being "the creditor to whom such debt is owed." 11 U.S.C. § 523(c)(1); *see also* Fed. R. Bankr.P. 4007(a) (stating that "a debtor or any creditor may file a

complaint to obtain a determination of dischargeability"). Consequently, standing to bring those claims requires that the plaintiff be a creditor. *Fezler v. Davis (In re Davis)*, 194 F.3d 570, 574 (5th Cir.1999); *Premier Capital, LLC v. Gavin (In re Gavin)*, 319 B.R. 27, 33 (1st Cir. BAP 2004).

Two Sixth Circuit cases which address the issue of standing under § 523(a)(5) reinforce the notion that a plaintiff must have an enforceable right to payment to have standing as to nondischargeability: *O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears v. Perlin (In re Perlin)*, 30 F.3d 39 (6th Cir.1994); and *Cundiff v. Cundiff (In re Cundiff)*, 227 B.R. 476 (6th Cir. BAP 1998). In *In re Perlin,* the Circuit held that an attorney for the debtor's ex-spouse did not have standing to request a determination of nondischargeability as to his attorney fees which were payable to the ex-spouse under a divorce decree, noting that the attorney did not have an "enforceable right to payment." 30 F.3d at 41. Similarly, in *In re Cundiff,* the BAP concluded that an ex-spouse who had failed to disclose a divorce court award for his fees in his own chapter 7 case lacked standing to assert the nondischargeability of the award in his ex-spouse's bankruptcy case. Because the award had not been disclosed, it remained an asset of his bankruptcy estate, meaning that the trustee in his bankruptcy case was the only party with a present interest in the judgment and standing to assert that it was not dischargeable.

### C. The Motion

■ The parties agree that the debtor Jeffrey Bilfield (and not his wife, joint

debtor Janet Bilfield) obtained a $150,122.28 loan from the plaintiff on December 10, 2009. The transaction was evidenced by a note containing a security agreement (the debtor's loan). By the plaintiff's own admission, it did not own the loan when it filed this complaint on July 13, 2012. Based on that, the debtors argue that the plaintiff was not a creditor when it filed the complaint and did not have standing to request the relief it is seeking. To support their request for summary judgment on that issue, the debtors point to this evidence: (1) while the plaintiff acknowledges selling the debtor's loan to Interbank, it asserts that it still has standing because it retained the servicing rights under the sales agreement; it has not, however, produced that agreement; (2) a UCC Financing Statement (Exhibit L–5) filed with the Ohio Secretary of State on January 20, 2010 (and produced by the plaintiff in discovery) shows Interbank as the secured party; (3) the plaintiff's 186–page loan file which it produced in discovery does not include a servicing agreement;[3] and (4) the plaintiff's representative, Kristian Vartabedian, testified at deposition that Interbank continued to collect loan payments and apply them to the loan balance after purchasing the loan.[4] All of this evidence taken together shows, initially, that when the plaintiff filed this complaint it was not a creditor and did not have the required interest in the debtor's loan.

In response, the plaintiff makes a number of arguments and also offers evidence through the affidavit of Kristian Vartabedian.[5]

---

**3.** Deposition of Bankers Healthcare Group at 12–20 and Exhs. A–II. Plaintiff's counsel represented that he provided all the documentation in the file to debtors' counsel.

**4.** Deposition of Bankers Healthcare Group at 96–97.

**5.** The plaintiff also asks that the motion for summary judgment be stricken because it exceeds the page limits set by the local rules.

■ First, it argues that it has standing based on the debtors' admission that "BHG is a secured creditor of Dr. Bilfield based on the UCC statement provided by Plaintiff in the course of these proceedings" [6] and their schedules which also identify the plaintiff as a creditor. The plaintiff's position that these are binding admissions under the Federal Rules of Evidence does not support its standing, however, because constitutional standing cannot be waived. Moreover, the admission was limited as it was based on information provided by the plaintiff. And the case law cited for the proposition that scheduling a creditor with a liquidated, non-contingent, undisputed debt is an admission of the debt does not apply here as the debtors are not disputing the debt, they are disputing the plaintiff's standing to raise issues concerning the debt. *See In re Perlin*, 30 F.3d at 39 (holding that attorneys and experts who had been scheduled as creditors did not have standing to contest dischargeability).

■ Next, the plaintiff argues that it has standing because its proof of claim is prima facie evidence of the validity and amount of the claim under the Bankruptcy Rules and is deemed allowed under the Bankruptcy Code. *See* 11 U.S.C. § 502(a) (providing that a proof of claim is deemed allowed unless a party in interest objects); Fed. R. Bankr.P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). This argument fails because the operation of Rule 3001(f) as to the prima facie validity is limited by Rule 3001(b) which requires that a claim must be executed by a creditor or its authorized agent. *See* Fed. R. Bankr.P. 3001(b). As a result, a creditor must satisfy the standing requirement of Rule 3001(b) to obtain the benefit of Rule 3001(f). Additionally, Rule 3001(f) and § 502(a) deal only with allowance of claims and whether a creditor will receive a distribution from the estate; they do not address the issues of discharge and dischargeability.

Finally, the plaintiff offers the Vartabedian affidavit [7] to support its standing. Vartabedian states in paragraphs 21, 22 and 23: [8]

21. Shortly after funding the Loan, BHG the plaintiff sold the loan to Interbank, one of BHG's partner banks, and entered into an *Individual Reserve Agreement* with Interbank (the "IRA") with respect to the Loan. Attached hereto as Exhibit A–4 and incorporated herein by reference is a copy of the IRA.

22. Pursuant to the IRA, BHG at all times remained the servicer of the Loan, even after ownership of the

See Local Bankruptcy Rule 9013–2. However, such relief is too drastic under the circumstances and the request is denied. Counsel for the debtors is, however, admonished to follow the rules.

6. Response at Exh. A–6 (Responses to First Requests for Admissions), docket 20.

7. The affidavit does not state Vartabedian's position, but he testified at deposition that he manages the plaintiffs collection department.

8. The debtors moved to strike the affidavits submitted with plaintiffs summary judgment briefs and raised a number of concerns as to

Vartabedian's personal knowledge of certain facts set forth in the affidavit, including whether Vartabedian has personal knowledge of the relationship between the plaintiff and Interbank. (Docket 23). As a motion to strike is not technically available with respect to a motion for summary judgment, the court construed the debtors' motion as an objection to the admissibility of the affidavit. *See Adams v. Valega's Prof. Home Cleaning, Inc.*, No. 1:12CV0644, 2012 WL 5386028 at *2 (N.D.Ohio Nov. 12, 2012) (collecting cases on this issue).

Loan passed to Interbank. The IRA provides, in pertinent part:

> In the event [the Borrower] ... defaults in paying any amount due with respect thereto ..., BHG will proceed against the defaulting Borrower and any guarantor or other obligor with respect to the [Loan], and any collateral securing the [Loan] for the collection of any sums due and owing by the defaulting Borrower, or such guarantor or other obligor. *[Interbank] grants to BHG the right and authority to proceed against the defaulting Borrower, any such guarantor or other obligor and any collateral securing the [Loan] for the collection of any sums due and owing by the defaulting Borrower or such guarantor or other obligor.* This right and authority granted to BHG includes the right by BHG, *in its own name,* on behalf of [Interbank], to ... make a claim in any bankruptcy court in which the defaulting Borrower or such guarantor or other obligor may have filed a petition in bankruptcy, and to commence litigation against such Borrower, guarantor or other obligor in any state or federal court to collect any sums due....

23. On or about October 19, 2012, BHG repurchased the Loan from Interbank pursuant to that certain *Resale Agreement,* a true and correct copy of which attached hereto as Exhibit A–5. Accordingly, BHG now owns the Loan, and Interbank has no right, title, or interest in the Loan.[9]

Exhibit A–4 to the affidavit is a document titled "Individual Reserve Agreement" that references the debtor's loan. BHG and Interbank are shown as the parties to the agreement. The agreement states that it is "made and effective on December 30, 2009" and includes the signature of BHG's Senior Vice President Thomas Badolato with the same date. The agreement is not signed by Interbank. Exhibit A–5 to the affidavit is a document titled "Resale Agreement" that references the debtor's loan. BHG and Interbank are shown as the parties to the agreement, which states that it was made on October 19, 2012. The agreement is signed by BHG's Senior Vice President Thomas Badolato, but is not signed by Interbank.

As discussed above, standing is jurisdictional and must exist at filing. As the plaintiff filed this adversary proceeding on July 13, 2012, it must show that it had standing on that date. Interbank unquestionably owned the debtor's loan when the plaintiff filed this adversary proceeding; that means Interbank, not the plaintiff, was the creditor with respect to the debtor's loan at that point in time. Because this evidence is sufficient to meet the debtors' initial burden on summary judgment, that burden now shifts to the plaintiff to set forth specific facts showing that there is a genuine issue of material fact as to its standing.

The plaintiff relies on these additional allegations: After selling the loan to Interbank in 2009, the plaintiff remained the loan servicer with the right to undertake collection activities in its own name should the loan go into default, rights which it retained under its agreement with Interbank. Also, after filing this case, the plaintiff repurchased the loan under that same agreement. To prove these allega-

---

**9.** Vartabedian Affidavit, plaintiff's response, docket 20 (emphasis and alterations in original).

tions, the plaintiff offers the Vartabedian affidavit. For the reasons discussed below, that affidavit is insufficient to meet the plaintiff's burden.[10]

First, although the plaintiff's argument depends on proving that it had the right to service the loan as of the July 13, 2012 filing based on its agreement with Interbank, it did not put that agreement into evidence. While the Vartabedian affidavit cites the agreement, it omits a key fact-the date on which the agreement was executed. Without that information, there is no evidence to support the allegation. The agreement attached to the affidavit does not supply the missing facts because it is not fully executed. Moreover, it states only that the plaintiff had the right to proceed with collection efforts in its own name on behalf of Interbank after Interbank notified the plaintiff of a default, which conflicts with Vartabedian's statement that plaintiff "at all times remained the servicer of the loan" under the agreement. And finally, the affidavit does not have facts establishing whether (or when) the debtor defaulted and Interbank gave the required notice to the plaintiff.

Second, the plaintiff argues that it repurchased the debtor's loan after filing this adversary proceeding. According to the Vartabedian affidavit, that transaction took place on or about October 19, 2012, well after the plaintiff filed this complaint. As standing must exist at filing, this event is not relevant to the standing analysis.

Consequently, the plaintiff failed to meet its burden of presenting evidence sufficient to defeat the debtors' motion on the issue of standing.

10. Based on the insufficiency of the affidavit, the court need not determine whether being the servicer of the debtor's loan would have been a sufficient basis for standing to assert the § 727 and § 523 claims.

## IV. *CONCLUSION*

In sum, after reviewing the evidence offered in the light most favorable to the plaintiff, this court concludes that there is no genuine issue of material fact as to standing and summary judgment is appropriately granted to the debtors on that issue.

The court will enter a separate judgment in accordance with this memorandum of opinion.

The trial will go forward on the debtors' counterclaim, only.